Gerald Hoffman and Naomi Hoffman v. Commissioner.
Hoffman v. Commissioner
Docket Nos. 6105-66, 1923-68.
United States Tax Court
T.C. Memo 1970-16; 1970 Tax Ct. Memo LEXIS 342; 29 T.C.M. (CCH) 44; T.C.M. (RIA) 70016; January 21, 1970, Filed. Gerald Hoffman, pro se, 6203 Biltmore Ave., Baltimore, Md. Gerald D. Babbitt, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: In these consolidated cases respondent determined deficiencies and additions to income tax as follows: Docket No.
Taxable Year
Deficiency
Addition to Tax
6105-66
1962
$8,180.61
$409.03
1963
599.01
29.95
1923-68
1964
3,578.33
*343 Due to concessions of the parties the sole issue remaining for our decision is whether respondent was correct in his determination that petitioners did not suffer a loss in 1964 from the worthlessness of section 1244 [1] stock. Findings of Fact Some of the facts have been stipulated and are so found. Petitioners Gerald and Naomi Hoffman (Naomi is involved herein solely by reason of a joint return and all references to petitioner are to Gerald), husband and wife, resided in Baltimore, Maryland, at the time their petitions were filed herein. They filed their joint Federal income tax returns for the calendar years 1962, 1963, and 1964 with the district director of internal revenue at Baltimore, Maryland. In April of 1962 a corporation known as Hoffman Mills Corporation (hereinafter referred to as Hoffman Mills) was formed pursuant to and under the laws of the State of North Carolina; a certificate of incorporation was filed with the secretary of state of North Carolina for this purpose on April 4, 1962. Petitioner was one of three incorporators thereof. Hoffman Mills was authorized *344 to engage in virtually all aspects of the textile industry with its principal place of business in Asheboro, North Carolina. Hoffman Mills was, by its certificate of incorporation as originally filed, authorized to issue 100,000 shares of one dollar par common stock and 20,000 shares of five dollar par preferred nonvoting stock. As to the procedure for the issuance of said stock the certificate of incorporation stated as follows: The stock of either class, not exceeding in the aggregate the amount herein authorized, may from time to time be issued and sold whenever authorized by a majority vote of all issued and outstanding common voting stock at a meeting of the stockholders regularly called for that purpose. In April of 1962 petitioner invested $30,000 in Hoffman Mills in exchange for 30,000 shares of the one dollar par common stock of the corporation. At the same time the L & H partnership, composed of Albert Lindy and Mr. Horneday, purchased 10,000 shares of the common stock for $10,000 and Anthony Minniac purchased 1,000 shares of the same stock for $1,000. During its first year of operation Hoffman Mills was unsuccessful. All of its cash reserves were expended and, in *345 addition, it was required to obtain advances from suppliers. Petitioner and Lindy obtained a $10,000 loan from a bank for which they were personally obligated. 45 In February or March of 1963 a Mr. Atkinson and a Mr. Streigle, together, invested approximately $50,000 in Hoffman Mills. Each received a 25 percent interest in the stock of the corporation. Due to these new shareholders the proportionate ownership of Hoffman Mills was as follows: petitioner held 25 percent, the L & H partnership held 25 percent and Atkinson and Streigle each held 25 percent. [2]
At this time pursuant to a recapitalization of Hoffman Mills petitioner was to exchange his 30,000 shares plus $15,000 for 30,000 shares of a new issue of stock. Due to the fact that petitioner did not have the additional $15,000 he placed his original 30,000 shares of stock in escrow and agreed to pay the $15,000 via deductions from his salary. In connection with the above-mentioned recapitalization Hoffman Mills' certificate of incorporation was amended on March 20, 1963. The amendment provided for 100,000 shares of one dollar par common voting *346 stock and 100,000 shares of Class B one dollar par common nonvoting stock. [3]
Until this time Hoffman Mills had been paying petitioner a salary of $20,000 per annum. It was agreed that his salary would be increased to $26,000 per annum and from the additional $6,000 payments towards the $15,000 would be deducted. [4]
Until August 1, 1963, the only remuneration that petitioner received from Hoffman Mills was in the form of salary and reimbursement for expenses. At no time were dividends paid. After August 1, 1963, petitioner did not receive remuneration of any kind. At the annual meeting held on April 1, 1964, petitioner's employment by Hoffman Mills was terminated by vote of the shareholders. Petitioner on his Federal income tax return for the calendar year 1964 deducted $30,000 as a loss due to the worthlessness of section 1244 stock. In *347 his notice of deficiency, dated February 5, 1968, respondent disallowed the deduction and asserted a deficiency of $3,578.33. Opinion By virtue of the consolidation of docket Nos. 6105-66 and 1923-68 the petitioner has placed before us the issue of his tax liability for the years 1962, 1963, and 1964. However, at the trial and in his brief petitioner takes as his only complaint the failure of the respondent to treat as a loss on section 1244 stock, in 1964, his stipulated investment of $30,000 in Hoffman Mills Corporation. We take this as our only issue for decision. Section 1244(a) provides: (a) GENERAL RULE. - In the case of an individual, a loss on section 1244 stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as a loss from the sale or exchange of an asset which is not a capital asset. In defining the term "section 1244 stock" subsection (c)(1)(A) reads: (c) SECTION 1244 STOCK DEFINED. - * * * means common stock in a domestic corporation if - (A) such corporation adopted a plan after June 30, 1958, to offer *348 such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan, Regulations section 1.1244(c)-1(c) was promulgated to amplify further the above requirement and states in part: (c) Written plan. (1) The common stock must be issued pursuant to a written plan adopted by the corporation after June 30, 1958, to offer only such stock during a period specified in the plan ending not later than two years after the date the plan is adopted. * * *. We have sustained the validity of the regulatory requirement that the plan be in writing. , . The only document received in evidence at the trial of this case was the original certificate of incorporation and a subsequent amendment thereto of Hoffman Mills. The certificate contains the usual provisions authorizing the issuance of certain classes of stock, and details the number of shares and par value of each. Obviously the certificate does not constitute the requisite written plan. It was not a document adopted by the corporation as such and, of course, did not specify the period of any stock *349 offering. 46 Petitioner has failed to show that he was the holder of section 1244 stock. Petitioner also fails for a second count. He neglected to introduce any evidence
Policy Year or Loan Value Insurance record is totally void of any facts which would permit us to find "the identifiable events" which the Supreme Court laid down long ago in , as a requirement to a section 165 loss. In order to reflect the concessions made by both parties, Decisions will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
2. No evidence was offered as to the fate of Minniac's $1,000 investment.↩
3. These provisions were obviously in lieu of the then existing capital structure.↩
4. It appears that deductions were also to be made from petitioner's salary to repay a loan of approximately $10,000 which he received from the L & H partnership. Under this agreement petitioner's total indebtedness was to be repaid within 5 years.↩